# United States Court of Appeals
## For the First Circuit

No. 16-1681

UNITED STATES OF AMERICA,

Appellee,

v.

JOSEPH BUFFIS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark G. Mastroianni, U.S. District Judge]

Before

Thompson, Selya, and Barron,
Circuit Judges.

Seth Kretzer and Law Offices of Seth Kretzer on brief for Appellant.

Francesco Valentini, Attorney, William D. Weinreb, Acting United States Attorney, Kenneth A. Blanco, Acting Assistant Attorney General, and Trevor N. McFadden, Acting Principal Deputy Assistant Attorney General, on brief for Appellee.

August 14, 2017

**THOMPSON**, **Circuit Judge**. Joseph Buffis, our appellant and the town of Lee's (now-former) Chief of Police, took $4,000 from a duo accused of running a house of ill repute--and in return, he promised to halt their prostitution prosecution. Buffis now claims he didn't coerce the duo--they were completely "comfortable" forking over their funds--so he cannot be guilty of extortion. According to him, that means the jury verdict finding otherwise must be overturned. According to us, Buffis is wrong. Here's why we affirm his conviction.

## Background[1]

Our sordid story begins with a bust. Tom Fusco and Tara Viola owned and operated an inn in Lee, Massachusetts, frequented by folks from all over the country. Viola also offered massages-- with sexual services on the side. An informant spotted Viola's online ad and tipped off Lee police. A raid ensued. Distraught, Viola immediately 'fessed up to the prostitution, then offered to donate her proceeds to charity and to help bring down other sex workers and Johns by cooperating in reverse-sting operations. Lee Police Officer Ryan Lucy and Massachusetts State Police Sergeant Christopher Meiklejohn turned down the first proposition--"any forefeiture of monies," Meiklejohn told her, "would be done through

---

[1] We frame these facts in the light most favorable to the jury's verdict. United States v. Turner, 684 F.3d 244, 246 (1st Cir. 2012).

the courts and in front of a judge." The officers wanted to take her up on the second--a good informant is hard to find. But if word got out about the bust, Viola would lose her value as a cooperator. (After all, if potential Johns knew not to go to the inn, there would be no further busts to make.) So Lucy and Meiklejohn tried to keep the raid on the down-low.

Cue our appellant Buffis, who was then serving as Chief of Police for the town of Lee. Meiklejohn clued him in on the plan to use Viola as an informant--and explained that for the plan to work, secrecy was of the essence, so he and Lucy didn't arrest Viola and Fusco. And yet, Buffis rang up the local paper and (falsely) reported that the duo had been arrested for prostitution. The local paper ran with the story--as did news outlets all over the east coast. With that, law enforcement lost a promising path to future busts, the inn lost a load of business, and Viola became terrified she would lose her kids. Viola and Fusco wanted the mess done with "as quietly and as efficiently as possible."

Buffis butted in once again, this time offering a seemingly simple solution to Fusco and Viola's troubles (troubles, remember, that he helped create): if Viola and Fusco agreed to donate the prostitution proceeds to a local charity, Buffis would "make things go away quietly" by having the case dismissed. (Indeed, it was Buffis' call whether the charges would go forward at all--if he decided not to sign the criminal complaint against

Viola and Fusco, criminal proceedings would halt.)  Buffis told Fusco that they would meet in private before Viola and Fusco's first scheduled court appearance, Buffis would bring "an agreement," and if the three came to terms, the case would be dismissed.  Buffis didn't specify the charity and said he couldn't set the price--another officer would deal with the "donation"-- but it could be anywhere from zero to ten grand.  And, he advised, unless you want to waste your money, don't bring a lawyer.  Fusco "felt pretty comfortable" with the idea of forfeiting the money if it meant the charges wouldn't go forward, so he agreed.

When Viola and Fusco got to the courtroom, lawyerless but armed with a blank check, Buffis asked the two court employees (including Clerk-Magistrate Thomas Bartini, who was to preside over the hearing) to clear out.  He then presented Viola and Fusco with an agreement--on Lee Police Department letterhead--labeled "Accord & Satisfaction."  Here's what it said:

> (1) Clerk-Magistrate Bartini had found "probable cause to issue criminal complaints" against Viola for Sexual Conduct for a Fee, and against both her and Fusco for Keeping a House of Ill Fame and Conspiracy;
>
> (2) the proceedings that day were confidential and subject to a non-disclosure agreement;
>
> (3) Viola and Fusco waived their rights to sue the Town; and
>
> (4) "[p]roceeds in the amount of $_____ shall be donated to the Laliberte Toy Fund as a voluntary donation in lieu of criminal fines or civil

- 4 -

forfeiture action, by the close of business this date."

Fusco and Viola didn't like the terms. For one thing, Fusco wanted to be able to tell everyone that the case had been dismissed (and limit the impact on the inn's legitimate business). And for another thing, Fusco and Viola wanted to donate to an animal rescue charity, not to a toy fund they had never heard of. And the kicker: they planned to donate one grand, but Buffis insisted on four. Buffis wrote $4,000 into the contract at the hearing, and Fusco wrote the check. Fusco didn't have the cash to cover it, so he told Buffis to sit on the check for a few days until Fusco could transfer funds from the inn's account. Viola and Fusco didn't like it, but they "didn't feel like [they had] a choice"--so they did "what [they] in a court of law were told to do."

Buffis brought Clerk-Magistrate Bartini back into the courtroom. Buffis explained that Viola and Fusco's case was going to be continued to the end of the day--at which point, Fusco thought, the whole thing would be dismissed (he was right). Fusco pushed Buffis to let him talk about the dismissal, but Buffis said no--and Bartini pointed out that if the parties did not abide by their agreement "Buffis can actually bring another . . . complaint

for the same thing and go forward with it."[2]  The local paper reported the scoop:  "Secrecy in sex case involving owners of the Inn . . . Authorities are tight-lipped about the results of [the] show cause hearing . . . [and] say they can't divulge the outcome" because of a "nondisclosure agreement among the parties."

Now here's where things started going downhill for Buffis.  Bartini told Buffis before the hearing that it seemed "crazy" not to go forward with the charges because it was such a high-profile case--the district attorney's office agreed and asked Massachusetts state police to investigate.  Captain Richard Smith paid a call on Buffis, who explained the donation situation, claiming that half went to the Laliberte Toy Fund (a Lee police charity that bought toys for kids in need, according to Buffis), half went to DARE (the police-run drug abuse prevention program), and that $1,000 of the DARE money had already been spent. Evidently believing this fib wouldn't hold Smith off for long, Buffis frantically phoned Bartini to figure out how to resurrect the charges against Viola and Fusco.  Smith's suspicions grew when Buffis changed his tune:  he hadn't spent any of the money, Buffis said, and he had a (fishily post-dated) donation "refund" check in hand to prove it.

---

[2] Sixteen months later, the same charges were in fact brought again--but this time not by Lee police.

Buffis was full of bull:  no money went to DARE, or to toys.  Buffis was using the Laliberte Toy Fund as his personal piggy bank, and he blew all but ten bucks of the Viola-Fusco "donation" in about a month.

A grand jury indicted Buffis for extortion by wrongful use of fear and under color of official right in violation of the Hobbs Act, 18 U.S.C. § 1951(a), plus a slew of money laundering-related charges stemming from his management of the Laliberte Toy Fund.  At trial, Buffis was acquitted of all charges but one:  extortion under color of official right.  Buffis moved for a judgment of acquittal; the district court denied the motion.  Buffis now appeals, and that brings us up to today.

### Buffis' Claim

Buffis challenges the sufficiency of the evidence to support his extortion conviction.  Specifically, Buffis says he did not coerce Viola and Fusco into paying up; without proof of coercion, he continues, he cannot be guilty of extortion.  We review preserved challenges to the sufficiency of the evidence de novo, considering the evidence in the light most favorable to the verdict.  <u>Turner</u>, 684 F.3d at 257.[3]  "The test is whether the

---

[3] We assume here that Buffis preserved the arguments he now raises on appeal--though it seems that the arguments he raised below are not the same as those he presses now.  Both focus on Viola's offer to pay, but in his post-trial motion Buffis contended that her offer proved that he did not know he was accepting money in exchange for an exercise of his official power.  Here, on the

evidence, including all reasonable inferences therefrom, would permit a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of the crime charged." United States v. Cruz-Arroyo, 461 F.3d 69, 73 (1st Cir. 2006). Appraised under this standard, we agree with the government that the trial evidence was sufficient for a jury to find Buffis guilty beyond a reasonable doubt, and that Buffis' legal arguments to the contrary have no merit.

First, the elements of Hobbs Act extortion. "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do" has violated the Hobbs Act. 18 U.S.C. § 1951(a). To show Buffis committed Hobbs Act extortion, the government had to prove that Buffis "obtain[ed] property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." Id. § 1951(b)(2) (emphasis added). In cases

---

other hand, he argues that Viola's proposition proves that she and Fusco were not coerced into donating the funds. He does not renew his knowledge-based argument on appeal; indeed, in his final point in his brief--"at most, the government proved bribery, not extortion"--he seems to concede that he knew the money was given in exchange for an exercise of his official power. But the government does not press the point (in fact, it addresses his knowledge argument in its brief) so we give him the benefit of the doubt and review the argument before us de novo. Though as we explain, neither argument gets him anywhere.

of extortion "under color of official right"--like what the government says (and the jury found) Buffis did here--the government can prove up the charge by showing that the defendant "obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts."  Turner, 684 F.3d at 253 (quoting Evans v. United States, 504 U.S. 255, 268 (1992)).

The government presented sufficient evidence of each of these elements for the jury to find Buffis committed extortion under color of official right beyond a reasonable doubt.  Buffis' bribe money came out of Fusco's business bank account for the inn, and the inn hosted visitors from all over the country; egro, the extortion affected commerce.  See Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 261 (1964) (motel serving interstate travelers operates in interstate commerce); United States v. Cianci, 378 F.3d 71, 99 (1st Cir. 2004) (requisite "de minimis effect" on commerce established under Hobbs Act if conduct "minimally depletes the assets of an entity doing business in interstate commerce" (citation omitted)).  Buffis also received a payment he was not entitled to collect:  the four-thousand-dollar check, which he deposited into his own personal slush-fund.  See Cruz-Arroyo, 461 F.3d at 73.  Contrary to Buffis' argument below, ample evidence suggests that Buffis knew the payment was made in return for an official act--agreeing not to sign the criminal complaint against Viola and Fusco and getting the criminal charges

dropped.[4]  Indeed, Buffis explicitly told Fusco that if they reached an agreement, he would have the case dismissed.  And although the government didn't have to prove that the defendant followed through on his end of the bargain, see Turner, 684 F.3d at 255-58, in this case it presented evidence of that, too:  after Fusco tendered the check, Buffis told the Clerk-Magistrate he wanted the case continued to the end of the day; then at the end of the day, the charges were dismissed.  Buffis' botched attempt to cover his tracks with the bogus refund check shows his consciousness of guilt--and is further evidence supporting the conviction.  Id. at 258-59.

Nevertheless, Buffis says, the evidence was insufficient to convict because Viola and Fusco did not feel coerced into paying up at the time they made the "donation"--in fact, Fusco said he felt completely comfortable with it.  The "Accord & Satisfaction"

---

[4] Buffis seems to argue that because Clerk-Magistrate Bartini had a role to play at the show cause hearing--determining whether there was probable cause to issue a complaint--Buffis' own power to affect Viola and Fusco's situation was limited, and that this fact should have some (to us, indiscernible) relevance to our analysis.  We note here that "it is irrelevant" that Buffis was not the only state actor who played a role in whether the complaint against Viola and Fusco would go forward; it is enough that Buffis "in [his] official capacity, had the power to facilitate [Viola and Fusco's] government business, and it was that power that [Viola and Fusco] paid [Buffis] to exercise."  United States v. Rivera Rangel, 396 F.3d 476, 485 (1st Cir. 2005).  In the event that Buffis meant to argue something else, his undeveloped argument is waived.  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

agreement, he says, is his ace-in-the-hole because both Fusco and Viola signed the paper saying the donation was "voluntary." Without a showing of coercion, the argument goes, he cannot be convicted of the crime of extortion. And besides, he can't be guilty (according to him) because Viola had the idea to begin with. The government disagrees, and for good reason: we have repeatedly rejected both arguments.

First, "an element of duress such as a demand" is not an element of the offense of Hobbs Act extortion under color of official right. <u>Evans</u>, 504 U.S. at 267-68. "The 'color of official right' and 'fear' prongs provide alternative, independently sufficient grounds for finding extortion; thus, adequate proof of one obviates any need for proof of the other." <u>Cruz-Arroyo</u>, 461 F.3d at 73. In other words, where the government presents evidence that the government official received a payment under color of official right, it need not prove that the official induced the payment through fear. There goes Buffis' coercion argument.[5]

---

[5] This point also disposes of Buffis' argument that without proof of coercion, the government has only proved bribery (not extortion). To the extent that he means to argue that proof of bribery cannot be proof of extortion (and vice-versa), he is wrong about that, too: although "it seems unnatural to prosecute bribery on the basis of a statute prohibiting extortion, . . . Hobbs Act extortion under color of official right includes the rough equivalent of what we would now describe as taking a bribe."

As to the second point, as the government points out, neither "[t]he fact that [the payer] approached [the public official] first" nor the payer's "readiness and even eagerness to play the game," "mean that extortion did not occur." United States v. Rivera-Medina, 845 F.2d 12, 14 (1st Cir. 1988) (quoting United States v. Hathaway, 534 F.2d 386, 395 (1st Cir. 1976)); accord Evans, 504 U.S. at 265 ("the word 'induced' is part of the definition of the offense by the private individual, but not the offense by the public official"); Cruz-Arroyo, 461 F.3d at 73–74 (the government need not prove "any affirmative act of inducement on the part of the corrupt official"). It is immaterial that Fusco and Viola approached the police first--as the district court put it, "[t]he government was not required to show that Defendant originated the idea for the donation, rather than simply developing and capitalizing on a concept suggested, out of desperation, by Ms. Viola."

## The End

We affirm Buffis' conviction.

Ocasio v. United States, 136 S. Ct. 1423, 1434 (2016) (internal quotation marks omitted) (quoting Evans, 504 U.S. at 260).